| | | |
|---|---|---|
| JAYCOB HENDREN, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 3:26-cv-192 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| FRANK STRADA, *et al.*, | ) | Magistrate Judge Poplin |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, a pro se prisoner incarcerated at the Morgan County Correctional Complex ("MCCX"), has filed a complaint under 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion to proceed *in forma pauperis*, **DISMISS** his claims, and **ORDER** Plaintiff to file an amended complaint if he wishes to pursue this litigation.

## I.      MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 1] and accompanying inmate account certificate [Doc. 6] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, the Court will **GRANT** this motion [Doc. 1].

The Court will **ASSESS** Plaintiff the civil filing fee of $350.00 and **DIRECT** the custodian of Plaintiff's inmate trust account to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty

dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Court will **DIRECT** the Clerk to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II. SCREENING OF COMPLAINT

### A. Standard

Under the PLRA, district courts must screen prisoner complaints and sua sponte dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B. Plaintiff's Allegations[1]

On February 25, 2026, MCCX 1 was locked down following the murder of Officer Pedigo in Security Management Unit ("SMU"), Unit 21. [Doc. 2 at 5]. Unit 21 is in MCCX 1, while Units

---

[1] Plaintiff's attached grievance records form part of the complaint. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings[.]" (citing Fed. R. Civ. P. 10(c))).

2

22 and 23 are in MCCX 2. [*Id.* at 5, 11]. While Unit 21 SMU houses violent and/or high-security inmates, Units 22 and 23 are overflow units housing "a mixture of security levels." [*Id.* at 5]. Plaintiff is housed in Unit 23. [*Id.*]. Plaintiff "was locked down with his serious mental health issues" and needed "additional treatment." [*Id.*].

On Mondays, Wednesdays, and Fridays, inmates must undergo strip searches and visual body cavity searches before being able to take a 5-to-10-minute shower. [*Id.* at 6]. And while showering, inmates may be viewed by both male and female "strike force members" via a window, in violation of TDOC's PREA policies. [*Id.*]. Inmates are not allowed recreation time. [*Id.*].

Inmates who "sp[ea]k[] up" are stripped of their property and left in their cell only with a mat and paper gown. [*Id.*]. Inmates are told that these orders "came down from Nashville[,]" which is a "failure to supervise and train properly." [*Id.*].

Aggrieved, Plaintiff filed this action against various TDOC officials and ten John/Jane Doe TDOC strike force officers seeking injunctive and monetary relief. [*Id.* at 3–5, 9].

**C.     Analysis**

**1.     Recreation**

Plaintiff maintains that Defendants have acted with deliberate indifference to his serious medical needs by denying him recreation since Officer Pedigo's death on February 25, 2026. [Doc. 2 at 5]. The Eighth Amendment entitles prisoners sufficient exercise to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). The Sixth Circuit has stated that when "exercise or recreational opportunity" is almost completely limited or denied, it impinges upon an inmate's rights absent a legitimate penological justification for the deprivation. *See Rodgers v. Jabe*, 43 F.3d 1082, 1087–88 (6th Cir. 1995) (citing *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).

3

Here, Plaintiff fails to identify who is responsible for creating or implementing the no-recreation policy in Unit 23, and therefore, he fails to state a claim against a cognizable Defendant. Moreover, Plaintiff does not allege any facts to illustrate what the denial of "recreation" for inmates in Unit 23 looks like. For instance, Plaintiff has not presented any facts to suggest that he is unable to exercise in his cell.

And to the extent Plaintiff's complaint is that he is not permitted outdoor recreation, there is no constitutionally minimum level of outdoor recreation that must be provided to prisoners. *See Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (observing that the Sixth Circuit has never set a minimum amount of outdoor time for inmates). Further, the Court notes that Officer Pedigo's murder constitutes a legitimate penological justification for temporarily limiting inmates' movement, as well as for increased searches of prisoners and/or their property, and increased officer presence in the units. *See Hudges v. Bedford County*, No. 4:18-CV-75, 2020 WL 980143, at *4 (E.D. Tenn. Feb. 28, 2020) (finding prisoner failed to state a § 1983 claim where "the evidence demonstrates that the [lack of] recreational opportunities were the result of the necessities of prison management, and thus, were reasonably related to legitimate penological interests").

Finally, although Plaintiff states he was locked down "with this serious mental health issues[,]" he has not alleged any facts suggesting that these issues worsened due to his limited recreation privileges. And "without such an allegation, Plaintiff does not state a viable Eighth Amendment claim" for the denial of sufficient recreation time. *Vargas v. Janow*, No. 3:21-CV-00574, 2021 WL 5084579, at *7 (M.D. Tenn. Nov. 1, 2021) (citation omitted).

Accordingly, the Court finds Plaintiff has failed to allege facts that would permit the plausible inference that the denial of recreation during this lockdown period violates his Eighth Amendment rights, and the Court will **DISMISS** this claim. *See, e.g., Knight v. Armontrout*, 878

4

F.2d 1093, 1096 (8th Cir. 1989) (noting that "[d]enial of recreation for a short period, per se, is not a constitutional violation"); *Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required).

### 2. Visual Cavity Searches

Plaintiff contends that three times per week, he is forced to undergo a visual cavity search before being permitted to take a short shower, and that your property is taken and you are left with just a paper gown and a mat if you "sp[ea]k[] up." [Doc. 2 at 6].

The Fourth Amendment's prohibition against "unreasonable" searches and seizures requires courts to balance the need for a prison search against the invasion of privacy it creates. *Williams v. City of Cleveland*, 907 F.3d 924, 935–36 (6th Cir. 2018) (citing *Bell v. Wolfish*, 441 U.S. 520, 558, 559 (1979)). The inquiry into reasonableness is "largely fact-driven[.]" *Scott v. Clay Cnty.*, 205 F.3d 867, 877 (6th Cir. 2000). Relevant factors include the scope of the intrusion, the justification for it, "the place in which it is conducted[,]" *Williams*, 771 F.3d at 950, and whether "obvious, easy alternatives" existed to better protected the prisoner's interests "at little cost to valid penological objectives[,]" *Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 530–31 (6th Cir. 2016).

Here, the penological justifications for strip searching inmates before permitting them to congregate in the shower are apparent from the face of the complaint; an officer was recently murdered in an inmate housing unit. And Plaintiff alleges that he is strip searched in his cell with only the guard(s) and his cellmate present. These circumstances do not permit the plausible inference that these visual cavity searches violate Plaintiff's Fourth Amendment privacy rights.

An additional consideration to Plaintiff's privacy claim is that he alleges he must "shower with the window in view of the guards' male and female strike force members thus violating

5

TDOC[']s very own PREA policies." [Doc. 2 at 6]. But Defendants' alleged failure to follow TDOC policy does not give rise to a constitutional claim, as TDOC's policies and procedures do not create constitutionally protected interests. *See McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest); *see also Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) ("It has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.").

However, the Sixth Circuit has recognized an inmate's limited right to bodily privacy under the Fourth Amendment in some circumstances where the prisoner is forced to expose himself to a member of the opposite sex. *See, e.g., Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (observing right to privacy claim under Fourth Amendment where male inmate forced to endure outdoor strip search in presence of female correctional officers); *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) (recognizing that "a prison policy forcing prisoners . . . to be exposed to regular surveillance by officers of the opposite sex while naked–for example while in the shower or using a toilet in a cell–would provide the basis of a claim on which relief could be granted"). Here, however, Plaintiff has not provided any facts that would permit the plausible inference that he is openly exposed to members of the opposite sex each time he showers. He alleges only that there are female and male guards on the strike force team, and that there is a window in the shower. And even if female guards are stationed at the window while male inmates shower, Plaintiff's right to bodily privacy must be considered against any legitimate penological reason for the intrusion. *See, e.g., Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 573, 574 (6th Cir. 2013). As repeatedly noted, Plaintiff's unit is on lockdown following an incident of violence.

6

MCCX has an interest in ensuring inmates do not have contraband and are not engaging in violence, especially when they are out of their cells and in contact with staff and each other. Thus, there is a reasonable penological justification for the intrusions on Plaintiff's rights under these circumstances.

Additionally, Plaintiff states that "if [inmates] spoke up" about the strip search, staff took their property, stripped them naked, and left them in a cell wearing only a paper gown [Doc. 2 p. 6]. But Plaintiff does not state this happened to him. Therefore, even assuming this allegation implicates a constitutional right, it is not one Plaintiff can assert. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (holding that a "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners"). Accordingly, the Court will **DISMISS** this claim.

### 3. Failure to Train/Supervise

Finally, Plaintiff claims that inmates who protest the strip search are "told the orders came down from Nashville[,] which these claims are failure to supervise and train properly." [Doc. 2 at 6]. But Plaintiff has no right to be free from reasonable strip searches in prison. *See Stoudemire*, 705 F.3d at 573–74. And the Court has determined that Plaintiff has not set forth facts to permit the plausible inference that the strip searches he has endured are unreasonable. Therefore, Plaintiff has not identified a constitutional injury related to the training or supervision of staff, and the Court will **DISMISS** this claim.

### 4. Opportunity to Amend

As pled, Plaintiff's complaint fails to state a plausible claim under § 1983. However, it is possible that, if provided with an opportunity to amend, Plaintiff may be able to present additional

facts that state a constitutional claim.  Accordingly, if Plaintiff wishes to proceed in this action, he is **ORDERED** to file an amended complaint within **fourteen (14) days** of entry of this Order that contains a plain, short statement of his claims supported by specific factual detail, the parties responsible, the injuries suffered, and his requested relief.  Plaintiff must avoid conclusory legal statements or arguments in this amended complaint.  The Court will **DIRECT** the Clerk to mail Plaintiff a § 1983 form for this purpose.

The Court **NOTIFIES** Plaintiff that it will only address the merits of Plaintiff's claims that relate to his original complaint.  Accordingly, Plaintiff **SHALL NOT** attempt to set forth in his amended complaint any additional claims, and he is advised that the Court will **DISMISS** any such claims.  Further, the Court **NOTIFIES** Plaintiff that this amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings.

Plaintiff is **CAUTIONED** that if he does not file an amended complaint by the deadline, the Court will **DISMISS** his complaint for failure to prosecute and comply with an order of the Court.

The Court **NOTIFIES** Plaintiff that it **WILL NOT** consider any other kind of motion for relief until after the Court has screened the amended complaint pursuant to the PLRA, which the Court will do as soon as practicable.  Accordingly, the Court will automatically deny any motions filed before the Court has completed this screening.

## III.   CONCLUSION

For the reasons set forth above:

1.      Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2.      Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to forward Plaintiff a § 1983 form;

5. Plaintiff is **ORDERED** to complete the § 1983 form within **fourteen (14) days** in accordance with the directives stated above **if** he wishes to pursue this litigation;

6. Plaintiff is **NOTIFIED** that failure to comply with this Order will result in the dismissal of this action; and

7. Plaintiff is **ORDERED** to immediately inform the Court of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

9